BROWN, J.,
dissenting.
The district court’s unchallenged findings of fact are incompatible with its conclusion that the Small Business Administration did not materially breach its settlement agreement with Richard America. Therefore, I respectfully dissent.
To get America to drop his discrimination and retaliation claims, SBA agreed to refer “all inquiries from prospective employers” to Human Resources. The purpose of this agreement was, the district court found, “to ensure that the SBA provided only neutral references.” America v. Mills, 714 F.Supp.2d 88, 101 (D.D.C. 2010). An SBA employee therefore materially breaches the agreement when he responds to a reference inquiry in a way that casts America in a negative light. As the district court put it, SBA’s breach was material if it “led to the provision of reference information that was not neutral and prejudiced [America] in his search for employment.” Id.
The district court made a series of findings that lead inevitably to the conclusion that SBA’s breach was material. First, the district court explicitly credited a reference checker’s transcription of SBA comments concerning “the circumstances surrounding Mr. • America’s proposed transfer to Kansas City, the fact that he did not report there, [and] the internal battle over Mr. America’s proposed transfer.” Id. at 99. Among other comments to that effect were those of SBA executive Arnold Rosenthal. Rosenthal told the caller that “[t]here was an internal battle going on with [America’s] transfer” and that this “was a difficult experience for him.” The district court found such comments “had to have occurred,” because they involve “significant details about the SBA and Mr. America’s employment there that no one at [the reference-checking company] could have known without speaking to people at SBA.” Id. The district court further found these specific comments by Rosenthal to be “negative statements.” Id. at 97. America had been forced to retire when he refused to accept the transfer, so he had good reason to keep that information from prospective employers.
These findings of fact are irreconcilable with the district court’s conclusion that SBA’s breach was immaterial. The district court tried to make sense of that conclusion by holding, “Rosenthal’s refer *333 ence to the ‘difficult experience’ that [sic— should read “of’?] the ‘internal battle’ over Mr. America’s possible transfer to Kansas City was not a matter of ‘vital importance,’ and did not ‘frustrate substantially’ the purpose of the contract.” Id. at 102 (citation and alteration omitted). This reasoning is flawed. Given the district court’s own findings that these statements were negative, id. at 97, and that the purpose of the contract was to prevent negative references, id. at 101, SBA’s breach necessarily “[went] to the essence and frustrate^] substantially the purpose for which the [settlement] was agreed to.” Draim v. Virtual Geosatellite Holdings, Inc., 522 F.3d 452, 454-55 (D.C.Cir.2008).
My colleagues agree with the district court that SBA’s breach was immaterial, because they find Rosenthal’s positive statements were more “numerous” than his negative ones. Maj. Op. at 331-32. This reasoning undermines the purpose of the settlement agreement. The requirement that a former employer refer all employment inquiries to Human Resources is a dead letter if he may avoid material breach by simply pairing every negative statement he utters with a positive one. As anyone with hiring experience can attest, employment references — especially references for the management-level positions America sought — are more art than science. Just a hint of negativity may be all it takes to warn a savvy employer away from a prospective employee. America reasonably hoped to avoid the risk of such value judgments by insisting that all inquiries be directed to Human Resources, which could make only objective statements about his employment history. “The judicial task in construing a contract is to give effect to the mutual intentions of the parties.” Mesa Air Group v. DOT, 87 F.3d 498, 503 (D.C.Cir.1996); see Lankford v. Platte Iron Works Co., 235 U.S. 461, 488, 35 S.Ct. 173, 59 L.Ed. 316 (1915). The court’s interpretation violates this principle and renders SBA’s agreement with America practically unenforceable.
This case illustrates the pitfalls of including a non-disparagement clause in a settlement agreement between a government agency and its former employee. Memories fade, and the difficulty of ensuring the agency’s personnel abide by the agreement grows with every passing year. There are good reasons not to enter into such contracts in the first place. But a deal’s a deal. Because I believe SBA materially breached its settlement agreement with America, I would reverse the judgment of the district court with instructions to reinstate America’s Title VII suit.